UNITED STATES of America, Appellee,

v.

James G. BARNES, Appellant.

No. 80–1232.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1980.

Decided Nov. 5, 1980.

Fredman, Watkins, Fredman & Kopf, Richard A. Fredman, St. Louis, Mo., filed brief for appellant.

Robert D. Kingsland, U. S. Atty., Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., filed brief for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and BECKER, District Judge.*

* The Honorable William H. Becker, United States Senior District Judge, Western District of Missouri, sitting by designation.

HENLEY, Circuit Judge.

James G. Barnes, appellant, was charged by indictment with distribution of a controlled substance, heroin, in violation of 21 U.S.C. § 841(a)(1). He was tried before a jury in the United States District Court for the Eastern District of Missouri, The Honorable Edward L. Filippine presiding. Upon a jury verdict of guilty judgment of conviction was entered and appellant was sentenced to twenty years imprisonment with a special parole term of six years. It is from this judgment and sentence that Barnes appeals. We affirm.

In November 1976 Albert Moore was arrested by officers of the St. Louis Police Department for selling heroin. Subsequent to this arrest Moore was approached by agents of the Drug Enforcement Administration (DEA) and officers of the St. Louis Police Department and confronted with the suggestion that he become an informant in connection with investigations into the distribution of drugs. To further explore the idea, Moore was taken to the office of the United States Attorney where discussions concerning such a possibility transpired.

These discussions culminated in a cooperation agreement. The agreement provided that in return for Moore's acting as an informant and participating in drug transactions in that capacity any charges pending against him would be dismissed. Moore was also to be furnished certain funds.

To make use of Moore's services the DEA rented adjoining apartments in St. Louis County. One of the apartments was used by Moore as his residence. The other apartment was used by the DEA and the St. Louis Police Department as a station from which they could monitor any activity taking place in Moore's apartment. This monitoring was undertaken with Moore's knowledge and consent. Consent forms were signed by Moore giving permission to have any of his telephone conversations recorded, any other conversations occurring in his apartment recorded, and any activity in his apartment video taped. To effectuate these ends Moore's telephone was tapped, his apartment was fitted with concealed radio transmitters, and a one way mirror was installed through which video tape pictures could be taken from the apartment occupied by the DEA.

Through the course of several telephone conversations, all of which were recorded, Moore learned that the appellant, Barnes, was a seller of drugs. So that he might purchase drugs, Moore arranged for Barnes to visit his apartment. Upon entering Moore's apartment Barnes sat down at a table across from Moore. He then reached into his trousers and took out a clear plastic bag which he placed on the table. In exchange for this plastic bag and its contents Moore gave Barnes a packet of money. The entire transaction was recorded by the video tape machine installed in the apartment occupied by the DEA. The contents of the package were later tested and found to be heroin.

Prior to trial Barnes made a motion to suppress from evidence any audio tape recordings or video tape recordings of conversations or meetings between himself and Moore. The district court, relying on *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), denied this motion. At trial the government placed into evidence the video tape recording of the drug transaction that occurred between Moore and Barnes. The government did not place into evidence any audio tape recordings.[1] Barnes now asserts that the failure of the district court to exclude the video tape recording from evidence violated his fourth amendment right to be free from unreasonable searches and seizures.

Barnes also made a pretrial Rule 16 discovery motion. Fed.R.Crim.P.16. This motion was granted and extensive discovery was had pursuant thereto. At trial the government offered certain documentary

---

1. The recordings made from the radio transmitters were distorted and of little use to the government. The appellant did, however, introduce a portion of them into evidence. Since Moore was unavailable to testify at trial, the government had no one who could identify the appellant's voice on the taped telephone conversations.

evidence which had not been revealed prior to trial in response to Barnes' Rule 16 motion. This evidence consisted of telephone company records which the government wished to use for the purpose of showing that the defendant was an inhabitant of a particular residence and had used a particular telephone number. Barnes objected to the introduction of these telephone records and requested that the court exclude them from evidence. Fed.R.Crim.P.16(d)(2). This request was denied and the court received the proffered records. Barnes now asserts that the court in doing so committed reversible error.

*Video Tape–Fourth Amendment*

Evidence obtained in violation of the fourth amendment is subject to the exclusionary rule and is not admissible. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). *But see United States v. Williams*, 622 F.2d 830 (5th Cir. 1980) (good faith exception to the exclusionary rule). However, in circumstances here present a person requesting imposition of the exclusionary rule must show that he possesses some legitimate fourth amendment interest relative to the contested evidence. *See Rakas v. Illinois*, 439 U.S. 128, 138–40, 99 S.Ct. 421, 427, 58 L.Ed.2d 387 (1978).

To exhibit a protected fourth amendment interest an individual must show an expectation of "privacy upon which he justifiably relied." *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), makes clear that an individual does not have a justifiable expectation that those with whom he interacts will not consensually convey to law enforcement officers information concerning his transactions. *Id.* at 751, 91 S.Ct. at 1125. *E. g., United States v. Jones*, 545 F.2d 1112, 1114 (8th Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977);

*United States v. Quinn*, 543 F.2d 640, 649 (8th Cir. 1976).

The appellant, however, attempts to place the present case in different posture than *White* by showing that Moore's consent to have his apartment monitored was not voluntarily given.[2] Barnes contends that the timing of the signing of the consent forms, Moore's physical condition (he was a paraplegic), and the rewards promised Moore in return for his cooperation all acted in the totality of the circumstances to make his consent involuntary.

We have explored at length the record evidence dealing with Moore's consent, and have taken into account the possible coercive factors suggested by appellant including Moore's subjective state of mind to the extent that it can be determined. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1972).

We attach no particular significance to the fact that the consent forms were signed in December, 1976, some days or weeks after Moore's arrest. Indeed, such a lapse of time strongly indicates an absence of coercion. Nor do we find specific evidence indicating that Moore's physical condition in any way affected the voluntariness of his consent. Finally, we have held that promise of benefits to a prospective informant does not necessarily render his cooperation involuntary. *United States v. Rich*, 518 F.2d 980, 985 (8th Cir. 1976), *cert. denied*, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976). *E. g., Cooper v. United States*, 594 F.2d 12, 14 (4th Cir. 1979); *United States v. Horton*, 601 F.2d 319, 322 (7th Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979).

In the totality of the circumstances we are persuaded that Moore's consent was essentially free and unconstrained and not a product of duress or coercion. It follows that Barnes is afforded no protection by the exclusionary rule and the video tape recording was properly admitted into evidence.

---

**2.** The parties raise, and we consider, no issue as to the form of the surveillance. *See generally* Comment, Electronic Visual Surveillance And The Fourth Amendment: The Arrival Of Big Brother, 3 Hastings Const.L.Q. 261, 279 n.104 (1976). Rather, we limit our inquiry to determining the voluntariness of the informant's consent to the surveillance.

*Telephone Records*

As indicated in its response to a Rule 16 discovery order, the government failed before trial to produce telephone company business records which tended to connect the defendant with a telephone from which calls allegedly were made to Moore, the informant, shortly before the sale of heroin on April 22, 1977.

In its brief the government asserts that the business records were not produced pretrial because at that time it had no intention of using the records as part of its case in chief. It was only after cross–examination of Agent McDowell on the second day of trial that the government decided to use the business records as evidence. That afternoon counsel for the government made the records available to defendant.

On the afternoon of the third day of trial the records were offered in evidence and received over the defendant's objection. There was no request for a continuance.

Essentially the same subscriber information contained in the business records connecting appellant with the telephone number 367–5524 had been available to appellant through other sources. He had been furnished taped telephone conversations involving that number several weeks before trial; early in the trial he had Jencks Act material; and he had the testimony of Agent McDowell, all of which tended to connect appellant with the address and number in question.

> Discovery matters are committed to the sound discretion of the district court and an error in administering the discovery rules is reversible only on a showing that the error was prejudicial to the substantial rights of the defendant.

*United States v. Pelton*, 578 F.2d 701, 707 (8th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978).

While on hindsight we do not necessarily approve of the government's failure to produce the business records prior to trial, in light of the cumulative nature of the evidence and the time available to the defense for examination and preparation

we are unable to say that evidentiary use of the records prejudiced any substantial right of the appellant, or, indeed, that such use was error.

From what has been said, it follows that the judgment of the district court in all things must be, and it is, affirmed.