MARY B. DAVIS

V.

COMMONWEALTH OF VIRGINIA

Record No. 841043

October 11, 1985

Present: All the Justices

*William P. Harris (Harris and Black*, on brief), for appellant.
*John H. McLees, Jr., Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In a bench trial, Mary B. Davis was convicted of involuntary manslaughter of her mother, Emily B. Carter, and sentenced to 10 years in the penitentiary. The trial court found that Carter's death resulted from Davis' criminal negligence in failing to provide her mother with heat, food, liquids, and other necessaries.

The principal issues in this appeal are: (1) whether Davis had a legal duty to care for Carter, and if so, (2) whether she breached the duty by conduct constituting criminal negligence. An additional issue involves the admission into evidence of two photographs of the victim taken during the autopsy.

On November 29, 1983, a paramedic with the Lynchburg Fire Department responded to a call at a house located at 1716 Monroe Street in the City of Lynchburg. The house was occupied by Davis and Carter. The paramedic arrived about 5:35 p.m. and found Carter lying on a bed. It was a cold day, and there was no heat in Carter's room. The only source of heat was a tin heater, and it was not being used. The only food in the house was two cans of soup, a can of juice, and an open box of macaroni and cheese. Two trash cans were found behind the house. One contained 11 or 12 empty vegetable cans, and the other was full of empty beer cans. An operable stove, a supply of firewood and a color television were found in Davis' upstairs bedroom.

Carter was admitted to a hospital that evening. According to her treating physician, Carter's vital signs were unstable and she was severely ill. A nurse testified that Carter's "pulse was 35; respiration was 18 . . . [,] blood pressure was 148 over nothing . . . and her [body] temperature was 80 degrees." Carter was at least five to seven percent dehydrated. The doctor diagnosed her principal problems to be low body temperature, severe malnutrition, and bilateral pneumonia. She also had a blood stream infection, a skull laceration, and multiple rib fractures. Carter died in the early hours of December 2.

A forensic pathologist with the Chief Medical Examiner's Office conducted an autopsy on Carter's body. He concluded that the causes of death were "pneumonia and freezing to death due to exposure to cold with a chronic state of starvation." He stated that any one of these conditions alone could have caused her death.

Additionally, the pathologist testified that a body temperature of 80 degrees was extremely low and that, except in rare, isolated cases involving children or young people, "no one survives" such a low body temperature. He estimated that it would take nine hours for a dead body to reach a temperature of 82 degrees in a room temperature of 67 degrees and that a living person would require a longer exposure to the cold to reach that temperature.

The pathologist further testified that when a person's dehydration reaches a five to seven percent range, it suggests that she has received no liquids for at least two days. He described Carter's condition as "bone dry." He also testified that Carter's physical condition at the time of the autopsy indicated that she had eaten "no food whatsoever" for at least 30 days.

For a number of years, Carter had been senile and totally disabled. The attending physician testified that Davis said her mother was "not able to feed herself at all; that she was not able to care for her personal needs and that she had to wear diapers and had to have total care." Moreover, Davis informed a number of people that she was responsible for the total care of Carter.

Carter signed a writing naming Davis her authorized representative to apply for, receive, and use her food stamps. Relying on this document, the Department of Social Services awarded Davis additional food stamp benefits of $75 per month and exempted her from the requirement of registering for outside employment as a requisite to receiving these benefits.

Davis also was the representative payee of Carter's social security benefits in the amount of $310 per month. Davis' household expenses were paid exclusively from Carter's social security. Davis also received $23 per month in food stamps for her mother.

■ First, we determine whether the trial court erred in admitting into evidence two autopsy photographs of the victim. Davis sought discovery pursuant to Rule 3A:14 (now Rule 3A:11). The motion specifically requested that the Commonwealth produce "[a]ny and all photographs taken in connection with this case, . . . including . . . any photographs of the alleged victim." Thereafter, the court ordered the Commonwealth's Attorney to furnish to the defendant "any and all hospital and doctor records in the custody of the Commonwealth's Attorney."*

The Commonwealth sought to introduce the two autopsy photographs which depicted the emaciated condition of Carter's body. These photographs had been in the possession of the pathologist, and the Commonwealth's Attorney was not aware of their existence until the morning of the trial. Consequently, the Commonwealth's Attorney did not disclose the photographs to Davis as required by the discovery order.

Three other photographs showing the victim's condition had been disclosed to Davis and were introduced as exhibits without objection. Moreover, the pathologist testified at length about Carter's condition. The two undisclosed photographs, however, showed her condition more clearly and graphically. Over Davis' objection, the photographs were admitted. Davis did not request either a postponement or a continuance.

While these photographs were inculpatory, the record does not establish that their nondisclosure prejudiced Davis. Her counsel was unable to suggest to the trial court how their earlier disclosure would have benefited Davis' defense or altered the course of the trial. Moreover, Davis does not contest their admissibility on any other grounds, and clearly, they are relevant and probative.

When a discovery violation does not prejudice the substantial rights of a defendant, a trial court does not err in admitting undisclosed evidence. *United States* v. *Barnes*, 634 F.2d 387, 390 (8th Cir. 1980); *United States* v. *Coffman*, 638 F.2d 192, 197-98 (10th Cir. 1980); *United States* v. *Saitta*, 443 F.2d 830, 831 (5th Cir.

---

*The Commonwealth contends this language was not broad enough to include the challenged photographs. For the purpose of this appeal, we assume, without deciding, that the language is sufficient to include the photographs

1971). *Cf. Lomax v. Commonwealth*, 228 Va. 168, 319 S.E.2d 763 (1984) (defendant denied right to explore and develop evidence critical to his defense); *Gilchrist v. Commonwealth*, 227 Va. 540, 317 S.E.2d 784 (1984) (defendant denied reasonable time to prepare for trial following discovery of evidence); *Cox v. Commonwealth*, 227 Va. 324, 315 S.E.2d 228 (1984) (defendant denied access to evidence material to her defense). Davis has shown no prejudice resulting from nondisclosure, and we hold that the trial court did not err in admitting the photographs.

 Next, we determine whether, under the facts and circumstances presented, Davis was under a legal duty to care for her mother. This presents an issue which we have not addressed previously.

A legal duty is one either "imposed by law, or by contract." *Pierce v. Commonwealth*, 135 Va. 635, 651, 115 S.E. 686, 691 (1923). When a death results from an omission to perform a legal duty, the person obligated to perform the duty may be guilty of culpable homicide. *Biddle v. Commonwealth*, 206 Va. 14, 20, 141 S.E.2d 710, 714 (1965); *Pierce*, 135 Va. at 651, 115 S.E. at 691. If the death results from a malicious omission of the performance of a duty, the offense is murder. On the other hand, although no malice is shown, if a person is criminally negligent in omitting to perform a duty, he is guilty of involuntary manslaughter. *Biddle*, 206 Va. at 20, 141 S.E.2d at 714.

Davis acknowledges the accuracy of the foregoing legal principles. She contends, however, that the evidence fails to establish that she had a legal duty to care for her mother, asserting that the evidence proved at most a moral duty. We do not agree.

 The evidence makes clear that Davis accepted sole responsibility for the total care of Carter. This became her fulltime occupation. In return, Carter allowed Davis to live in her home expense free and shared with Davis her income from social security. Additionally, Carter authorized Davis to act as her food stamp representative, and for this Davis received food stamp benefits in her own right. From this uncontroverted evidence, the trial court reasonably could find the existence of an implied contract. Clearly, Davis was more than a mere volunteer; she had a legal duty, not merely a moral one, to care for her mother.

 Finally, we consider whether the evidence is sufficient to support the trial court's finding of criminal negligence. When the sufficiency of the evidence is challenged on appeal, the evidence

and all reasonable inferences fairly deducible therefrom shall be viewed in the light most favorable to the Commonwealth, and the court's judgment must be affirmed unless it is plainly wrong or without evidence to support it. *Tuggle* v. *Commonwealth*, 228 Va. 493, 510, 323 S.E.2d 539, 549 (1984).

When the proximate cause of a death is simply ordinary negligence, *i.e.*, the failure to exercise reasonable care, the negligent party cannot be convicted of involuntary manslaughter. To constitute criminal negligence essential to a conviction of involuntary manslaughter, an accused's conduct "must be of such reckless, wanton or flagrant nature as to indicate a callous disregard for human life and of the probable consequences of the act." *Lewis* v. *Commonwealth*, 211 Va. 684, 687, 179 S.E.2d 506, 509 (1971); *see also Gooden* v. *Commonwealth*, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984); *King* v. *Commonwealth*, 217 Va. 601, 606, 231 S.E.2d 312, 316 (1977); *Richardson* v. *Commonwealth*, 192 Va. 55, 57, 63 S.E.2d 731, 732 (1951); *Goodman* v. *Commonwealth*, 153 Va. 943, 952, 151 S.E. 168, 171 (1930).

Davis contends that she cared for her mother as best she could under the circumstances. She points to the testimony of her four sisters and her boyfriend who stated that everything seemed normal and that they observed nothing to suggest that Carter was being neglected. These witnesses stated that the house always was heated properly and that sufficient food was available at all times.

Against this testimony, however, was the scientific evidence that Carter died of starvation and freezing. The evidence indicates that Carter had received no food for at least 30 days. She lay helpless in bed in an unheated room during cold weather. The trial court, as the trier of fact, determines the weight of the evidence and the credibility of the witnesses. Obviously, the court, as it had the right to do, accepted the Commonwealth's evidence and gave little or no weight to the testimony of the defendant and her witnesses. The court reasonably could conclude that Carter could not have starved or frozen to death unless she had been neglected completely for a protracted period of time.

We hold, therefore, that the evidence supports the trial court's finding that Davis' breach of duty was so gross and wanton as to show a callous and reckless disregard of Carter's life and that Da-

vis' criminal negligence proximately caused Carter's death. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*