595 So.2d 959 (1991)
Raymond Earl LEET, Appellant,
v.
STATE of Florida, Appellee.
No. 90-01627.
District Court of Appeal of Florida, Second District.
December 16, 1991.
Steven Herman of Steven Herman, P.A., Zephyrhills, for appellant.
*960 Robert A. Butterworth, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Raymond Earl Leet appeals his convictions for child abuse and third-degree felony murder. §§ 827.04(1), Fla. Stat. (Supp. 1988), 782.04(4), Fla. Stat. (1987). Although this case presents two difficult issues, we affirm. First, the state's evidence was sufficient to create a jury question concerning Mr. Leet's legal obligation to prevent his girlfriend's abuse of her child while the child was living in Mr. Leet's home on a permanent basis. Second, even though the physical injuries which ultimately caused the child's death were inflicted by the child's mother in Mr. Leet's absence, the state's evidence established circumstances prior to the final beating from which a jury could properly find Mr. Leet culpably negligent. In deference to the valid concerns expressed by the special concurrence and the need to assure statewide uniformity on issues relating to the protection of Florida's children, we certify an issue to the Florida Supreme Court.

I. A BRIEF BIOGRAPHY OF JOSHUA COLLINS.
The victim, Joshua Collins, was born on January 31, 1987, to Mary Lee Collins. Ms. Collins was incarcerated at the time of Joshua's birth. The child was immediately given to Joanna Hay to raise until Ms. Collins was released.
About one month after Ms. Collins was released from jail, when Joshua was four months old, she returned for the child. She kept him for about three weeks and then returned him to Ms. Hay. In January 1988, when the child was about one year old, Ms. Collins again retrieved her son.
Mr. Leet met Ms. Collins in that same month. Shortly thereafter, Ms. Collins, Joshua and Nathan, Joshua's older brother, moved into Mr. Leet's home in Zephyrhills, Florida. Ms. Collins became pregnant with Mr. Leet's child.
In April 1988, HRS investigated a child abuse complaint concerning Joshua. Ms. Hay had reported this claim after seeing Mr. Leet bathing Joshua while Joshua was bleeding from his nose. Although Joshua had facial bruises, the report was classified as unfounded when Ms. Collins explained that the child had fallen down a flight of stairs. Her story was confirmed by her brother.
In May 1988, a neighbor friend took photographs of Joshua showing extensive facial bruises. On June 8, 1988, HRS conducted another investigation concerning an abrasion over Joshua's left eye. This report was classified as unfounded when Ms. Collins claimed that Joshua had fallen into some concrete blocks.
On June 18, 1988, Mr. Leet took Joshua and Ms. Collins to the hospital because Joshua had multiple bruises on his head, trunk, and extremities. These injuries occurred while Mr. Leet was at work. Ms. Collins claimed that Joshua had fallen against a tombstone in a cemetery. On this occasion, Ms. Collins was arrested and charged with child abuse.
Joshua and his brother were then placed in the custody of their maternal grandmother. Both boys were returned to their mother, with the acquiescence of HRS and the circuit court, before the criminal charges were resolved. Apparently, Nathan was returned in August and Joshua in early October.
By early November 1988, there is evidence that Joshua was once again abused. Mr. Leet knew that the child had received a black eye "from something" in this period. It is noteworthy that this abuse resumed when Ms. Collins was nine months pregnant and her criminal case concerning the prior child abuse reached sentencing. A day or two before the fatal incident, Ms. Collins was sentenced to probation for the prior abuse.
On Monday or Tuesday during the week of November 20-26, 1988, the week of Joshua's death, Joshua sustained large bruises on his chest. When Mr. Leet asked about the bruises, Ms. Collins claimed that Nathan had closed a car door on Joshua. Nathan is a small child. He was sometimes *961 rough with his younger brother. According to Mr. Leet, Nathan admitted that he closed the car door on Joshua. Nevertheless, the autopsy photographs display graphic bruises from this incident. A jury could decide that the ordinary reasonable person would not believe that these bruises were caused by a car door.
On Wednesday, Joshua had a black eye when Mr. Leet returned from work. Ms. Collins explained that Joshua had caused this injury by either poking his own eye or rubbing it too much. The autopsy photographs, however, were sufficient evidence to permit a reasonable jury to believe that any reasonable person would have rejected this explanation.
Mr. Leet worked nights and slept during the morning. On Thursday, November 24, 1988, when he got up in the afternoon, he noticed that Joshua had some swelling near his jaw. Ms. Collins claimed this was caused by an infected tooth. Mr. Leet accepted this explanation and went to work. After the child's death, Mr. Leet told the police that the child appeared fine on Thursday afternoon. Mr. Leet's brother saw this injury and testified that the swelling was the size of a man's fist.
It is unclear from the evidence whether Ms. Collins beat Joshua again on Thursday afternoon or evening. Because the child already had extensive marking on his upper chest and head, it is difficult to determine if an additional beating occurred. An additional beating, however, is consistent with the medical testimony and the child's near comatose state on Friday.
At approximately 2 a.m. on Friday, November 25, 1988, Ms. Collins came to Mr. Leet's work place with Joshua and Nathan. She explained that she was in labor. Mr. Leet drove Ms. Collins to Tampa General Hospital while Joshua slept in the back seat. When Ms. Collins entered the hospital to have his child, Mr. Leet did not encourage the child's mother to request any medical treatment for Joshua. Mr. Leet and the two boys returned home at sunrise. Mr. Leet took care of Joshua and Nathan on this day. Joshua slept a large part of the day, did not eat, and vomited at least once during the day.
On Friday evening, Mr. Leet returned to the hospital to pick up Ms. Collins. Joshua stayed in the back seat of the car while Ms. Collins was checking out. When she got into the car, she discovered that Joshua was not breathing. He was taken to the emergency room and died shortly thereafter.

II. THE CASES AGAINST MS. COLLINS AND MR. LEET.
Ms. Collins' responsibility for Joshua's death is not at issue in this case. She pled guilty to aggravated child abuse and first-degree felony murder and received a life sentence. Both her legal and moral responsibility for the death of her own child are beyond question. See generally Freeze v. State, 553 So.2d 750 (Fla. 2d DCA 1989).
This case concerns the more troublesome issue of Mr. Leet's criminal responsibility. Ms. Collins did not testify at Mr. Leet's trial. It is noteworthy that Mr. Leet was not charged as a principal concerning the aggravated child abuse by Ms. Collins. See § 777.011, Fla. Stat. (1987). Instead, the state charged him with simple child abuse and third-degree felony murder. McDaniel v. State, 566 So.2d 941 (Fla. 2d DCA 1990).
Section 827.04(1), Florida Statutes (Supp. 1988), states:
Whoever, willfully or by culpable negligence, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment, or who, knowingly or by culpable negligence, inflicts or permits the infliction of physical or mental injury to the child, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to such child, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Section 782.04(4) states that third-degree murder requires proof of "the unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the perpetration of, or in *962 the attempt to perpetrate, any felony... ."[1]
We note that the state did not charge Mr. Leet with personally depriving Joshua of medical treatment on Friday while the child was in his sole custody. See generally Hermanson v. State, 570 So.2d 322 (Fla. 2d DCA 1990). Whether this was an accidental or intentional prosecutorial decision is unclear. Medically, any failure to obtain care on Friday may not have been a cause of Joshua's death. By that time, it may have been too late to save this child. Thus, the state maintains that Monday through Thursday of the last week of the child's life is the critical period in which Mr. Leet permitted child abuse by culpable negligence.

III. THE JURY COULD DETERMINE THAT MR. LEET OWED A DUTY TO PROTECT JOSHUA UNDER SECTION 827.04(1).
The state argues that Mr. Leet is a "whoever" that "by culpable negligence ... permit[ted] ... physical ... injury" to this child. The state suggests that the broad language of the statute creates a duty to protect a child that applies to many adults in addition to the natural parents of the child. Mr. Leet argues that he is not this child's father, did not assume the role of a father, and had no legal authority to regulate the mother's discipline. Therefore, he concludes that he could not, as a matter of law, "permit" the abuse.
We have no need today to determine the outer constitutional limits of this statutory duty. This statute has been declared constitutional. State v. Joyce, 361 So.2d 406 (Fla. 1978). Mr. Leet has not challenged its constitutionality as applied to him in this case. This case was submitted to the jury on the Florida Standard Criminal Jury Instructions without objection. Those instructions required that the jury decide, as an element of the offense, whether "Mr. Leet had assumed responsibility for the temporary or permanent care and maintenance of Joshua Collins."[2]See Fla. Std.Jury Instr. (Crim.) 827.04.
In this case, there is evidence that Mr. Leet allowed the mother and child to move into his home on a permanent basis. They shared various expenses and shared the same living space. Although the mother was primarily responsible for child care and discipline, there is evidence that Mr. Leet bathed Joshua, played with him, and took him for car rides. Indeed, Ms. Collins left the child in Mr. Leet's sole care for the last day of the child's life.
We recognize that common law marriage is no longer a viable doctrine in Florida. § 741.211, Fla. Stat. (1987). If this couple had separated, Mr. Leet would not owe child support to Ms. Collins for Joshua. Albert v. Albert, 415 So.2d 818 (Fla. 2d DCA 1982), review denied, 424 So.2d 760 (Fla. 1983). It is not entirely clear that Mr. Leet had created a total in loco parentis relationship with Joshua by November 1988. See generally 67A C.J.S. Parent and Child §§ 53-60 (1978); 59 Am.Jur.2d Parent and Child §§ 75-79 (1987). He may not have been able to authorize medical treatment for Joshua. We do not, however, regard these circumstances as dispositive.
Under circumstances similar to this, it has been held that a boyfriend may be a person "in a position of familial, custodial, or official authority" for purposes of sexual battery on a child. Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986). "Although appellant was neither the victim's natural father nor her stepfather, nor does the evidence disclose his status as in loco parentis to the victim at the time of the offense charged, appellant did live with the child and her mother in the same household... ." *963 Coleman, 485 So.2d at 1345. Likewise, we conclude that the jury was entitled to determine that Mr. Leet had temporarily assumed responsibility for Joshua's well-being when he established a family-like relationship with Joshua and his mother for an extended and indefinite period.

IV. THE JURY COULD DETERMINE THAT MR. LEET'S CONDUCT CONSTITUTED CULPABLE NEGLIGENCE.
The jury received the standard instruction on culpable negligence. That instruction states:
Culpable negligence. Each of us has a duty to act reasonably towards others. If there is a violation of that duty without conscious intention to harm, that violation is negligence, but culpable negligence is more than a failure to use ordinary care for others.
For negligence to be called culpable negligence, it must be gross and flagrant. The negligence must be committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury.
See Fla.Std.Jury Instr. (Crim.) 827.04.
Apparently, Mr. Leet was never home when Ms. Collins abused Joshua. As explained earlier, his conduct on the Friday the child died cannot be the source of the finding of culpable negligence. Instead, the issue in this case is whether Mr. Leet followed a course of conduct between Monday and Thursday of the week of Joshua's death that he reasonably should have known was likely to cause death or great bodily injury to Joshua.
Mr. Leet was approximately thirty years old at the time of these events. He had been previously married and had three children by his first wife. Although he had not been extensively involved in the upbringing of his own children, he had lived with them when they were Joshua's age. Despite his limited education, a jury could determine that he knew the difference between normal childhood scrapes and bruises, and the kind of physical abuse involved in this case.
From the problems in May and June, Mr. Leet knew that Ms. Collins was capable of making excuses to cover her acts of child abuse. The bruises on Joshua and the excuses of Ms. Collins in November were comparable to those in the spring. This is not a case involving isolated child abuse; it concerns a return to a prior pattern of abuse. The pattern returned when Ms. Collins was under two obvious sources of stress. A jury could reasonably conclude that Mr. Leet simply closed his eyes to clear evidence of the most severe acts of child abuse.
The jury could decide that a reasonable person, living with this child and the mother, would not have accepted three suspicious explanations for physical injuries to the child in the span of a few days. It could disbelieve Mr. Leet's testimony that Nathan had caused Joshua's chest bruises and determine that even a lay person would have known that the bruises were not caused by a car door, but were consistent with physical abuse. Likewise, the jury could also determine that Mr. Leet should not have accepted Ms. Collins' explanation that Joshua caused his black eye by poking it or rubbing it too much.
The involvement of HRS is an interesting factor in this case. Arguably, Mr. Leet could assume that HRS and the circuit court would not have returned Joshua to his mother if they believed the problem would reoccur. On the other hand, Mr. Leet knew the criminal case was ongoing. He could easily have called HRS or the court on Tuesday or Wednesday to explain the evidence of child abuse that existed in his home. He did not. Admittedly, he was faced with a dilemma. If he reported Ms. Collins, he knew there could be new criminal charges and, perhaps, the woman he loved would be sent back to jail. If he did not report the problem, Joshua might be *964 severely injured. He chose to leave Joshua at risk. The law does not protect that choice merely because he did not wish to jeopardize Ms. Collins.
In Jakubczak v. State, 425 So.2d 187 (Fla. 3d DCA 1983), a mother was convicted of child abuse because she left her child with her husband who was mentally ill. The child had previously suffered unexplained injuries while in his care. If a mother can be culpably negligent for leaving a child with its father, Mr. Leet can be equally negligent for taking no action to protect the child from its mother in his household. Section 827.04 applies to acts of omission as well as acts of commission. See generally State v. Harris, 537 So.2d 1128 (Fla. 2d DCA 1989); Nicholson v. State, 579 So.2d 816 (Fla. 1st DCA 1991); Jakubczak.
We share the concern of the special concurrence that child abuse is a very emotional topic and that juries may be tempted to shift a defendant's standard of care from culpable negligence to mere negligence, or to lower the state's burden of proof.[3] The state must prove a crime beyond a reasonable doubt, not merely an immoral or unethical omission by a preponderance of the evidence. Nevertheless, when the state has met its prima facia burden, the issues must be submitted to a jury. State v. Law, 559 So.2d 187 (Fla. 1989). In this case, we conclude that the state fulfilled its burden and the decision of guilt was properly left to the jury to determine. Annotation, Validity and Construction of Penal Statute Prohibiting Child Abuse, 1 A.L.R. 4th 1 (1980).
Once the jury determined that Mr. Leet was guilty of child abuse, the evidence was sufficient to permit them to further conclude that his actions constituted third-degree felony murder. § 782.04(4), Fla. Stat. (1987). We find Mr. Leet's remaining points on appeal without merit.
Because many children in this state live in households with adults who are not legally part of their family and because both children and unrelated adults need uniform application of this criminal statute, in light of the absence of controlling supreme court precedent, we certify the following question to be a matter of great public interest:
CAN A PERMANENT ADULT MEMBER OF A HOUSEHOLD OWE A DUTY TO AN UNRELATED CHILD WHO LIVES IN THE HOUSEHOLD TO PREVENT PARENTAL CHILD ABUSE?
Affirmed.
THREADGILL, A.C.J., concurs.
PATTERSON, J., concurs specially.
PATTERSON, Judge, concurring specially.
I concur with reservations as to whether Mr. Leet can be guilty of the offense as charged. Section 827.04(1), Florida Statutes (Supp. 1988), proscribes both acts of commission and acts of omission. Mr. Leet is charged with an act of omission, i.e., failing to prevent Collins from abusing her child in his absence. Count II of the information, *965 which alleges child abuse, reads in pertinent part:
RAYMOND E. LEET ... between the 1st day of April and the 25th day of November ... [1988] ... did then and there knowingly or by culpable negligence, permit physical injury to a child, Joshua Collins, and in so doing caused great bodily harm, permanent disability, or permanent disfigurement to said child;... .
As is acknowledged by the majority, Mr. Leet was not charged as a principal in the aggravated child abuse committed by the child's mother or for any act of commission of child abuse on Friday, November 25, 1988, the day of Joshua's death  a day during which Joshua was in Mr. Leet's sole custody.
Section 827.04(1) describes the class of persons to which it applies as "whoever," an all encompassing term of no limitation. This term, or its equivalent, "any person," is used throughout the criminal statutes and is appropriate in regard to all acts of commission. It is not appropriate, however, for criminal acts of omission which depend on the violation of a duty owed between parties by reason of a relationship existing between them. Mr. Leet was not married to Joshua's mother, was not his natural father or other blood relative, and his uncontroverted testimony refuted an in loco parentis relationship with Joshua. He had no legal standing in regard to Joshua whatsoever.[4]
Mr. Leet is charged with having permitted the abuse to occur. "To permit" implies the legal ability "to prevent." Mr. Leet holds no such legal authority in his own right which he could exercise over Joshua or the child's mother. His only recourse would be to attempt to prevent further abuse by reporting the child's recurring injuries to the police, to HRS, or to some other authority. In my view, Mr. Leet could not, by himself, legally prevent the abuse and, therefore, in like manner, could not have permitted it to occur.
I concur rather than dissent because of section 415.504, Florida Statutes (Supp. 1988).[5] This section requires "any person" who knows or suspects of child abuse to report it to HRS. Mr. Leet did not do this, and his failure to report constitutes a second-degree misdemeanor under section 415.513, Florida Statutes (Supp. 1988). If the violation of this statutory duty is construed to be "permitting" the abuse to continue and if such omission rises to the level of culpable negligence, then an affirmance of Mr. Leet's conviction is proper. If not, *966 he should be discharged.[6]
I also concur in the certified question.
NOTES
[1] The statute further explains that certain felonies cannot be the underlying offense for third-degree felony murder. Child abuse is not one of those felonies.
[2] The source of this aspect of the standard jury instruction is unclear. The parties have not explained the difference between the language of the statute and the language of the instruction. It is possible that this part of the instructions is a carryover from a time when the statute referred to whoever willfully deprived "his child" of necessities. § 828.04(2), Fla. Stat. (1971).
[3] This case is troublesome, in part, because the state did not prove beyond a reasonable doubt that Mr. Leet had any legal malice or traditional criminal intent to harm Joshua. Culpable negligence is not a common law theory of criminal intent. It is an objective standard. See Taylor v. State, 444 So.2d 931, 934 (Fla. 1983); see generally Commonwealth v. Pierce, 138 Mass. 165, 52 Am. Rep. 264 (1884); W. LaFave & A. Scott, Substantive Criminal Law § 3.7(a-b) (1986); 22 C.J.S. Criminal Law § 38 (1989). Thus, it was not essential for the state to prove that Mr. Leet had actual, personal knowledge that his omission would lead to death or great bodily harm. So long as his conduct would be gross and flagrant, evincing a reckless disregard for human life if committed by the ordinary reasonable man, the issue of guilt must be submitted to a jury. This is true, even though Mr. Leet may be more timid or less intelligent than the ordinary reasonable man described in the objective standard. We share the concern of the special concurrence that the culpable negligence standard for this type of omission may sometimes seem harsh and may well punish a defendant for a crime lacking mens rea. Nevertheless, it was the legislature's prerogative to select this objective standard for use in child abuse cases.
[4] There is no Florida case thus far which has extended the act of omission provision of section 827.04(1) to a live-in boyfriend or girlfriend. The majority in this regard cites to Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986). Coleman, however, is a sexual abuse case and is to be distinguished from child abuse arising from the violation of a separate statute. See D.A.O. v. Dept. of Health & Rehab. Serv., 561 So.2d 380 (Fla. 1st DCA 1990). Other jurisdictions confronted with this question have come to varying conclusions. See Annotation, Validity and Construction of Penal Statute Prohibiting Child Abuse, 1 A.L.R. 4th 38 (1980).
[5] Mandatory reports of child abuse or neglect; mandatory reports of death; central abuse registry and tracking system. 
(1) Any person, including, but not limited to, any:
(a) Physician, osteopath, medical examiner, chiropractor, nurse, or hospital personnel engaged in the admission, examination, care, or treatment of persons;
(b) Health or mental health professional other than one listed in paragraph (a);
(c) Practitioner who relies solely on spiritual means for healing;
(d) School teacher or other school official or personnel;
(e) Social worker, day care center worker, or other professional child care, foster care, residential, or institutional worker; or
(f) Law enforcement officer, who knows, or has reasonable cause to suspect, that a child is an abused or neglected child shall report such knowledge or suspicion to the department in the manner prescribed in subsection (2).
The violation of this section constitutes an act of omission and in such regard the use of the term "any person" suffers from the same type of infirmities which I have noted in regard to the use of the term "whoever" in section 827.04(1). It has been construed to be subject to some limitations, but not in the context of the facts of this case. See State v. Groff, 409 So.2d 44 (Fla. 2d DCA 1981).
[6] I do not pursue the effect of this violation of statutory duty further because it was not specially argued to the jury or addressed in this appeal. I do note, however, that more than one of the state's witnesses testified to observing clear signs of abuse which they did not report.