**Alexandria**
ALFRED MORRIS CABLE

v.

COMMONWEALTH OF VIRGINIA

No. 0637-90-4

Decided June 4, 1991

COUNSEL

B. R. Hicks, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**WILLIS, J.**—On November 6, 1989, the appellant, Alfred Morris Cable, killed David Clowers in a hunting accident and was charged with involuntary manslaughter. At the conclusion of the Commonwealth's evidence, and again at the conclusion of all the evidence, he moved that the evidence be struck and the charges against him dismissed. Those motions were denied. After the jury returned its verdict finding him guilty as charged, appellant moved that the verdict be set aside as contrary to the law and the evidence. That motion was denied. The trial court found the appellant guilty of involuntary manslaughter and sentenced him in accordance with the jury verdict. On appeal, the appellant contends that the evidence was not sufficient to prove him guilty of criminal negligence and that the trial court erred in convicting him of involuntary manslaughter. We find no error and affirm the judgment of the trial court.

On the early morning of November 6, 1989, the appellant and David Clowers, his friend and prospective stepson, went hunting on Massanutten Mountain in Warren County. It was the opening day of turkey season, and the two men planned to hunt turkeys. Both were dressed in camouflage clothing and had blackened their faces. Entering the woods, they "split up" to hunt separately but met again for lunch. After lunch, having found no game during the morning, they decided to hunt higher up the mountain. Later that afternoon, they met again at the top. Clowers said that he was going to stay on top of the hill for a while. Appellant went

over the hill about thirty yards through thick, rocky terrain.

Appellant was armed with a semi-automatic twelve-gauge shotgun. In anticipation of shooting a turkey, he had loaded it with shells containing double-aught buckshot. Since by afternoon they had located no turkeys, appellant and Clowers decided to hunt squirrels as well. Appellant placed in his gun a "mixed load," the first shell containing No. 4 shot (for small game) and the remaining two shells containing double-aught buckshot.

Moving through the thick brush about thirty yards from the top of the hill, appellant sat down on a rock near which were scratchings indicating the presence of turkeys. About ten or fifteen minutes later, he heard a shot above him and to his right, in the vicinity where he had left Clowers. A few minutes later, he heard a squirrel "barking" off to his right. He got up and walked toward the squirrel's location. He heard what he thought was the sound of a squirrel jumping from a tree. He turned, put his gun up, saw a flash of movement, and fired. He described the movement as a flash of "black." The discharge from the shotgun struck Clowers, who was nearby in the thick underbrush.

The appellant removed his hunting coat and wrapped it around Clowers. He propped Clowers up, made him as comfortable as he could, and left to get help. When he returned about two hours later, Clowers had died as a result of the gunshot, two double-aught pellets having penetrated his body. Near where the appellant had been standing when he fired was found a spent twelve-gauge shell casing with markings indicating a double-aught load. This shell was ejected from appellant's semi-automatic shotgun when he fired the fatal shot.

Involuntary manslaughter is defined as

the accidental killing of a person, contrary to the intentions of the parties, during the prosecution of an unlawful, but not felonious act, or during the improper performance of some lawful act. The "improper" performance of the lawful act, to constitute involuntary manslaughter, must amount to an unlawful commission of such lawful act, not merely a negligent performance. The negligence must be criminal negligence. The accidental killing must be the proximate result of a lawful act performed in a manner "so gross, wanton, and culpa-

ble as to show a reckless disregard of human life."

*Gooden v. Commonwealth*, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984) (citations omitted).

In going hunting, appellant was engaged in the lawful pursuit of an activity sponsored and licensed by the Commonwealth. He had the lawful right to be on the mountain, to carry his shotgun and its ammunition, and to fire upon turkeys or squirrels, both of which were in season. The question raised in this appeal is whether his firing of the shot which killed Clowers was an act of negligence of the degree defined in *Gooden*.

■ "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citation omitted).

This tragic accident happened on opening day of turkey season. It is common knowledge that opening day is a time when most hunters aspire to be afield. The game is most plentiful and has not been made wary by exposure to hunting. The location of the accident was a public hunting ground. It was not a place where the appellant had the right to expect that he and Clowers would be alone. Although appellant had seen or heard no other hunters that day, he could not be certain that none were in the vicinity. Hunting is an activity which involves stealth. The appellant had left Clowers but a short distance away. He knew that Clowers was dressed in camouflage clothing, had blackened his face, and would be difficult to see in the thick brush. Appellant apparently had misloaded his gun, having not a No. 4 shot but a double-aught buckshot as the first shell to be fired. Whichever load was in the chamber, he had in his hands a weapon of lethal power at close range. The appellant testified that he knew that he needed glasses for long-distance vision. He had noticed when driving that things at a distance, such as signs, appeared blurry. However, he had not obtained glasses, and at the time of the accident, had done nothing to correct his impaired vision. A hunting safety expert testified that it is an established safety rule that a hunter should "always be sure of your target and what is behind it before you fire." The

appellant testified that he had been hunting for thirty years.

The circumstances imposed upon the appellant a high duty of care in identifying his target and in making certain that his field of fire was clear before pulling the trigger. Notwithstanding this, alerted by a noise which he supposed to be a squirrel jumping from a tree but which could well have been something else, he fired at an unidentified target which he perceived only to be "a flash of movement." This supports a finding that he fired blindly and wildly and in utter disregard of the safety of others. Such conduct constituted the unlawful performance of the lawful act of hunting and was "so gross, wanton and culpable as to show a reckless disregard of human life" and is sufficient to support the appellant's conviction of involuntary manslaughter. *See Gooden*, 226 Va. at 573, 311 S.E.2d at 785.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Duff, J., and Moon, J., concurred.