# ALFRED MORRIS CABLE

## V.

# COMMONWEALTH OF VIRGINIA

Record No. 911152

February 28, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ.,
and Harrison, Retired Justice

*B. R. Hicks* for appellant.
*Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

Tried by a jury in the Circuit Court of Warren County, appellant Alfred Morris Cable was convicted of involuntary manslaughter for the killing of his hunting companion. The defendant appeals the Court of Appeals' affirmance of that conviction, *Cable v. Commonwealth*, 12 Va. App. 565, 405 S.E.2d 444 (1991), with the sole appellate issue being whether the evidence was sufficient to support the jury's verdict.

The facts are undisputed, although some are susceptible of conflicting inferences. Therefore, applying settled appellate principles, we will state the facts in the light most favorable to the Commonwealth, which prevailed in the trial court.

In the early morning of November 6, 1989, the first day of turkey hunting season, defendant, age 44, and the victim, David Virgil Clowers, age 37, arrived together in a Warren County section of the George Washington National Forest, known as Shaw Gap, to hunt for turkeys.

The area was open to the public. The most popular activity conducted there was hunting, although it was "common to find backpackers, hikers, birdwatchers, [and] people that look at trees and flowers" present in the area. The homicide took place about 3:30 p.m. on a Massanutten Mountain range where the terrain was steep with dense vegetation and small trees "very close together." The weather was "partly overcast" but the visibility was "very good."

The defendant, an experienced hunter, and the victim were legally dressed in camouflage attire and their faces were blackened. The defendant was armed with a 12-gauge semi-automatic shotgun. He was carrying two types of ammunition in shells that looked "just alike" although labelled differently. Some shells were packed with double-aught buckshot, "capable of inflicting very serious, grievous wounds at a long distance," and others were packed with No. 4 birdshot, used for hunting small game.

During the morning hours, and into the early afternoon, the pair had been hunting separately without success. They saw no other persons in the woods, nor any turkeys. After they met for lunch, they decided to hunt for squirrels, which were also in season. Defendant decided to change the load in his weapon. He removed the double-aught buckshot shells and thought he inserted shells with No. 4 birdshot. The duo decided to separate again and the defendant "walked about 30 yards over the hill." The victim remained "on top of the mountain."

About 10 to 15 minutes passed and defendant heard gunshot to his right rear and behind him; he thought it was the victim shooting. "Maybe 20 minutes" later, defendant heard a squirrel "barking off to the right." Defendant started walking towards the sound of the squirrel, which defendant estimated came from 20 yards away. Defendant continued walking towards the sound and a ravine, approaching "a big old tree."

According to the defendant, "when I got to the edge of it, I just stopped because I did not want to cross it, because it was thick through there." Continuing, defendant said: "So, when I stopped, I heard something like a squirrel jumping out of the tree. I turned,

put my gun up, and I seen a flash of movement and I shot . . . it was just a flash of movement," black in color.

After defendant fired, the victim "hollered, 'Alfred, damn it, you shot me, buddy.'" Defendant stated that the vegetation was so thick at the scene that even if the victim had been wearing an orange vest, he would not have seen him through the foliage. Defendant, who was not wearing eyeglasses, admitted that "for a long time" his distance vision had been impaired but he had not obtained glasses before the incident.

At the time he fired, defendant had "no idea" the victim "was in that area." The record does not reveal the distance between the defendant and the victim when he was shot. According to defendant, "He was, I guess, across the ravine like, on the other side sort of."

The victim immediately had difficulty breathing. After rendering aid to the victim, the distraught defendant went down the mountain seeking medical assistance for his friend. The defendant, along with rescue personnel, returned to the scene about two hours later to find that the victim had died. He had sustained two penetrating buckshot wounds, one entering the left rear rib cage and the other entering the waist area at the left rear. The former wound caused the death.

Subsequently, the defendant was indicted, tried, and sentenced in accordance with the jury's verdict to 12 months in jail. The trial court suspended the execution of all but four months of the jail sentence, and imposed other conditions including a prohibition against the defendant hunting with a firearm for five years. Execution of the sentence was stayed pending appeal.

Settled principles pertinent to this case should be reviewed. Where a defendant has been convicted by a jury whose verdict has been approved by the trial judge, and where the defendant assails the sufficiency of the evidence, under familiar rules it is the appellate court's duty to examine the evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong. If there is evidence to sustain the verdict, the reviewing court "should not overrule it and substitute its own judgment, even if its opinion might differ from that of the jury." *Snyder* v. *Commonwealth*, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961); Code § 8.01-680.

"Involuntary manslaughter is defined as the accidental killing of a person, contrary to the intention of the parties, during the prosecution of an unlawful, but not felonious, act, or during the improper performance of some lawful act. *Beck* v. *Commonwealth*, 216 Va. 1, 4, 216 S.E.2d 8, 9-10 (1975); *Mundy* v. *Commonwealth*, 144 Va. 609, 615, 131 S.E. 242, 244 (1926). The 'improper' performance of the lawful act, to constitute involuntary manslaughter, must amount to an unlawful commission of such lawful act, not merely a negligent performance. The negligence must be criminal negligence. *Kirk* v. *Commonwealth*, 186 Va. 839, 847, 44 S.E.2d 409, 413 (1947). The accidental killing must be the proximate result of a lawful act performed in a manner 'so gross, wanton, and culpable as to show a reckless disregard of human life.' *King* v. *Commonwealth*, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977). *See Bell* v. *Commonwealth*, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938)." *Gooden* v. *Commonwealth*, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984).

■ In this context, the term "gross, wanton, and culpable" describes conduct. The word "gross" means "aggravated or increased negligence" while the word "culpable" means "deserving of blame or censure." *Bell*, 170 Va. at 611, 195 S.E. at 681. " 'Gross negligence' is culpable or criminal when accompanied by acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts." *Id*. at 611-12, 195 S.E. at 681.

In this Court, the defendant contends that the Court of Appeals' affirmance of his conviction improperly establishes a rule of strict liability in criminal cases arising from hunting accidents. Conceding that he was careless and failed to exercise due care, defendant maintains that he was not criminally negligent.

He points out that the victim "was wearing camouflage clothing, had blackened his face, and was in a ravine in dense vegetation." He points to testimony that he "had neither seen nor heard anyone else in the area in the nine or ten hours he had been on the mountain." He argues that he "had ample reason to believe that no one was or could be in the vicinity." He says, "Based upon his

experience, the acuity of his hearing, and his knowledge of the terrain that lay between where he had last seen Clowers and his own position, he was certain that he could have heard Clowers moving through the woods and since he had not heard him, he reasonably believed that Clowers was still up on the mountain, high and to his right."

Defendant argues that the evidence is uncontradicted that he believed his weapon was loaded with No. 4 birdshot which, he says, is not likely to inflict serious bodily injury or death, that he thought he was shooting at a squirrel, and that he shot only once. Thus, defendant contends, his conduct, as revealed by all the evidence, "cannot be said to evince a callous and reckless disregard for human life." We do not agree.

■ As we examine the evidence which tends to support the jury's verdict, we conclude that the judgment of conviction is neither plainly wrong nor without evidence to support it. Thus, we hold that the Court of Appeals did not err in affirming the conviction.

■ Some of the very factors upon which the defendant relies to exonerate himself of criminal negligence actually tend to support the conviction. The defendant knew that his companion was nearby dressed in camouflage clothing with a blackened face, so attired to conceal his presence. The defendant was fully aware that the thickness of the foliage would render a person so attired still more obscure. Being an experienced hunter, the defendant knew, or should have known, one of the basic principles of hunting safety, as stated by the Commonwealth's expert witness, "always be sure of your target and what is behind it before you fire."

Although possessing this knowledge, the defendant, with impaired vision, nonetheless fired at "a flash of movement" without identifying the target, having mistakenly inserted a lethal load into his weapon. He seeks to excuse his conduct by saying that he believed he was shooting at a squirrel. Yet, he never saw a squirrel. Given the conditions existing in this thicket of foliage in this public section of a national park, the defendant had a duty to identify his target before shooting. A person who is criminally negligent in omitting to perform a duty is guilty of involuntary manslaughter, although no malice is shown. *Davis v. Commonwealth*, 230 Va. 201, 205, 335 S.E.2d 375, 378 (1985). This defendant never even *attempted* identification.

Indeed, the defendant did not have to shoot at all. He could have waited until his view of a target was unobstructed, especially since he knew that at least one other human was in the immediate area.

Paraphrasing *Bell*, we believe defendant's conduct amounted to aggravated negligence evidenced by acts of omission of a wanton nature, showing an indifferent disregard of the rights of others, under circumstances which made it not improbable that injury would occur, the defendant being charged with knowledge of the probable result of his acts.

Accordingly, the judgment of the Court of Appeals will be

*Affirmed.*

JUSTICE STEPHENSON, with whom CHIEF JUSTICE CARRICO and RETIRED JUSTICE HARRISON join, dissenting.

I respectfully dissent.

A higher degree of negligence is required to establish criminal negligence than to establish simple or gross negligence.* To establish criminal negligence, the evidence must prove beyond a reasonable doubt that a defendant's conduct was so gross and wanton as to show a reckless disregard of human life. *Bell* v. *Commonwealth*, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938).

"[A]n actual or constructive consciousness of the danger involved" is essential to prove wanton negligence. *Wolfe* v. *Baube*, 241 Va. 462, 465, 403 S.E.2d 338, 340 (1991). Thus, "[t]he act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." *Infant C.* v. *Boy Scouts of America*, 239 Va. 572, 580-81, 391 S.E.2d 322, 327 (1990).

In the present case, the victim was dressed in camouflage attire, and his face was blackened. The defendant had no reason to be-

---

* Simple negligence is the failure to exercise that degree of care that a reasonably prudent person would exercise under similar circumstances to avoid injuring another. Gross negligence is "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." *Ferguson* v. *Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971) (emphasis omitted).

lieve that the victim was nearby. They had gone their separate ways approximately 30 minutes earlier. They had seen no other persons all day. The defendant, an experienced hunter, thought he heard a squirrel "bark," then "heard something like a squirrel jumping out of [a] tree." He fired his shotgun upon seeing "a flash of movement" in a thicket. The defendant thought that he was shooting at a squirrel. He also believed that his gun was loaded with "bird shot."

The defendant and the victim were not only good friends and hunting companions but the victim soon would have been the defendant's son-in-law. It is inconceivable that the defendant would consciously show a reckless disregard of the victim's life.

The only other involuntary manslaughter case arising out of a hunting accident that we have decided is *Gooden* v. *Commonwealth*, 226 Va. 565, 311 S.E.2d 780 (1984). In *Gooden*, a majority held that the evidence was sufficient to sustain the defendant's conviction. 226 Va. at 573, 311 S.E.2d at 785. Although I joined the dissent, *id*. at 573-74, 311 S.E.2d at 785-86, I think the evidence in *Gooden* was much stronger for conviction than is the evidence in the present case.

In *Gooden*, the victim wore a red hat and red bandannas pinned to the front and back of his jacket, and he stood "on top of a knoll," in the "clear," upon a power line easement. *Id*. at 567, 311 S.E.2d at 781. Further, the defendant fired his gun even though "too many" hunters had been observed that afternoon along the easement. *Id*., 311 S.E.2d at 781-82. Finally, the victim's companion saw no deer in the vicinity either before or during the shooting. *Id*. at 573, 311 S.E.2d at 785.

Justice Cochran's dissent in *Gooden* contains the following statement which is equally appropriate in the present case:

> No one can deny that this was a tragic accident. But [the defendant] was engaged in the lawful pursuit of a form of recreation sponsored by the Commonwealth. He was not required to insure the safety of all other hunters within the range of his [weapon]. The devotees of this sport are aware of a certain inherent risk of danger where high-powered weapons may lawfully be used. To convict [the defendant] of manslaughter, under the most favorable view of the evidence, is in effect to impose a rule of strict liability. We have not approved such a rule in civil litigation and we are not justi-

fied in applying it in a criminal prosecution. Although the evidence is sufficient to establish ordinary negligence, I do not agree that it is sufficient to establish criminal negligence.

*Id.* at 574, 311 S.E.2d at 786.

Accordingly, I would hold that the evidence, as a matter of law, is insufficient to establish criminal negligence. Upon that issue, I do not think that reasonable minds could differ. Therefore, I would reverse the trial court's judgment.