COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Willis and Bumgardner
Argued by teleconference


HERSHEL FRANK SULLIVAN, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 1038-98-3        JUDGE JERE M. H. WILLIS, JR.
                                       APRIL 6, 1999

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LEE COUNTY
William C. Fugate, Judge Designate

Anthony E. Collins (Collins & Collins, on
brief), for appellant.

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


On appeal from his convictions of involuntary manslaughter, in violation of Code § 18.2-36, Hershel Frank Sullivan, Jr., contends (1) that the trial court erred in ruling that the road upon which he was driving was not a "highway" as defined by Code § 46.2-100, and (2) that the evidence is insufficient to sustain his conviction. Because Sullivan's conduct did not rise to the level of willful or wanton negligence, evidencing a reckless disregard for human life, we reverse his convictions and dismiss the charges.[1]

_____

[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication

[1]Because the evidence is insufficient to sustain the convictions whether or not "new" Route 58 was a highway, we do not address whether the trial court erred in ruling that it was a

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

On August 4, 1995, Paula Rouse and her young daughter were killed in a collision at the intersection of Route 724 and a new segment of Route 58, which was still under construction. At the time of the collision, the two eastbound lanes of "new" Route 58 were partially paved. The two westbound lanes were surfaced with gravel. The new Route 58 was not officially open to the general public, but it was in use by local traffic. No traffic controls or barriers were located at the intersection, but barriers were in place approximately two miles east and two miles west of the intersection.

Sullivan was delivering asphalt in a dump truck to a paving site on "new" Route 58. He had been instructed to use the partially constructed new road and had done so several times that day. He was making his last delivery of the day when the accident occurred.

---

private road.

Ms. Rouse was proceeding south on Route 724. A witness, who lived about four hundred feet from the intersection, testified that he saw her pass his home and estimated her speed at twenty-five miles per hour. However, the same witness testified that about three or four seconds later, he heard the sound of the collision. Expert witnesses calculated that Ms. Rouse would have been driving about sixty-five miles per hour in order to travel approximately four hundred feet in three to four seconds.

The accident occurred when Sullivan's truck, proceeding east on new Route 58, struck the right side of Ms. Rouse's car, which was southbound on Route 724, crossing the eastbound lanes of new Route 58. Sullivan testified that he had been driving between forty-five and fifty miles per hour, the speed being driven by other similar vehicles over that stretch of the new construction and that he had slowed down as he approached the intersection, but seeing no other traffic, had just begun accelerating when he felt the impact. He did not see the Rouse car before the accident. Sullivan was the only surviving witness to the accident.

For purposes of our analysis, we assume, without deciding, that new Route 58 was not a public highway. In that event, no speed limit would have applied to new Route 58. Route 724 would have had the right of way over traffic proceeding along the new

construction.  Thus, it was Sullivan's duty to operate his truck at a reasonable and safe speed, under the circumstances, to keep it under proper control, to maintain a proper lookout for vehicles crossing the new construction on Route 724, and to yield the right of way to any such vehicles.  His failure to exercise reasonable care to perform those duties would constitute negligence.  However, our inquiry is not whether Sullivan was guilty of negligence, but whether he was guilty of conduct that supports his convictions of involuntary manslaughter.

While involuntary manslaughter is a Class 5 felony, it is not statutorily defined.  See Code § 18.2-36.  "Involuntary manslaughter is

> the accidental killing of a person, contrary to the intentions of the parties, during the prosecution of an unlawful, but not felonious act, or during the improper performance of some lawful act.  The 'improper' performance of the lawful act, to constitute involuntary manslaughter, must amount to an unlawful commission of such lawful act, not merely a negligent performance.  The negligence must be criminal negligence.  The accidental killing must be the proximate result of a lawful act performed in a manner 'so gross, wanton, and culpable as to show a reckless disregard of human life.'"

Cable v. Commonwealth, 12 Va. App. 565, 567-68, 405 S.E.2d 444, 445 (1991) (citation omitted), aff'd, 243 Va. 236, 415 S.E.2d

–

218 (1992).  A finding of criminally culpable negligence

requires that the defendant have

> act[ed] consciously in disregard of another
> person's rights or act[ed] with reckless
> indifference to the consequences, with the
> defendant aware, from his knowledge of
> existing circumstances and conditions, that
> his conduct probably would cause injury to
> another. . . . Willful or wanton negligence
> involves a greater degree of negligence than
> gross negligence, particularly in the sense
> that in the former an actual or constructive
> consciousness of the danger involved is an
> essential ingredient of the act or omission.

Griffin v. Shively, 227 Va. 317, 321-22, 315 S.E.2d 210, 213

(1984) (citations omitted).

In Tubman v. Commonwealth, 3 Va. App. 267, 348 S.E.2d 871

(1986), the defendant entered a dual highway from the side,

crossing the westbound lanes and then the median, and entered

the eastbound lanes, striking a motorcycle that he had failed to

see approaching.  Noting the defendant's duty, before entering a

public highway, to stop, to maintain a lookout for vehicles on

the highway, and to yield the right of way to vehicles

approaching on the highway, we held:

> Tubman's negligence is not so gross, wanton,
> and culpable as to show reckless disregard
> of human life.  We do not find that Tubman
> acted "consciously in disregard of another
> person's rights," nor do we find that he was
> driving with reckless indifference to the
> consequences of his actions.

Id. at 275, 348 S.E.2d at 875.

Sullivan possessed a valid commercial operator's license. He drove his truck on new Route 58 at a speed that was lawful, not inherently dangerous, and consistent with the speed of other similar vehicles on the same stretch of road. He had his truck under control. The most that can be said against him is that he failed to maintain a proper lookout. No evidence establishes that he did so willfully, deliberately, recklessly, or with an intentional disregard of the safety of others. The evidence fails to prove that he was guilty of an utter or reckless disregard for human life and fails to prove involuntary manslaughter.

The judgment of the trial court is reversed, and the charges are ordered dismissed.

<u>Reversed and dismissed</u>.