COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Senior Judge Hodges
Argued at Richmond, Virginia


MARSHA KING ASCENCIO

                                                    MEMORANDUM OPINION* BY
v.        Record No. 3357-02-2                      JUDGE WILLIAM H. HODGES
                                                    FEBRUARY 3, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge

John A. Rockecharlie (Bowen, Champlin, Carr & Rockecharlie, on
brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


        Marsha King Ascencio, appellant, was convicted of two counts of felony child neglect.

Appellant contends the evidence was insufficient to support her convictions, arguing that her

conduct did not constitute a "willful act" or rise to the level of criminal negligence required under

Code § 18.2-371.1(B) and that the evidence failed to prove the length of time she was absent from

the residence and whether she is the parent, guardian or custodian of the older of the two children.

Finding no error, we affirm the convictions.  However, because appellant's sentences exceeded the

maximum allowed by law, we remand for the trial court to modify the sentences.

                                        Facts

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).  So viewed, the evidence

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

proved that appellant left her two children, ages eight and eleven, in their home alone for several days in March of 2002 while she was out-of-state. Appellant left notes around their home instructing the children on different issues. One note instructed the children to watch the weather channel in the morning so they could decide how to dress appropriately for school. The note told them to put their key around their neck and go to the bus stop at 8:03 a.m., and told them what to do when they got home from school. The note told them what to eat for breakfast, snack, and dinner on Monday, Tuesday, Wednesday and Thursday, the days appellant would be away before returning on Friday, the day the note read "Mom's home." However, there was not enough food in the refrigerator for the children to eat the meals specified in the note and, apparently, the children had no way to restock the refrigerator. In addition, several of the specified meals, such as grilled cheese, hot dogs, chicken nuggets, rice, and macaroni and cheese presumably required the children to cook using a stove or microwave. The children were instructed to check Caller ID before answering the telephone and to answer only calls made from specific telephone numbers that "Mommie's [sic] calls will be [from]" "no matter what." Another note instructed the children that they could call appellant at night after she called them and told her "which house" she was staying in that night. The note also instructed the children to "behave in school while I am away" and to "sit still." The eight-year-old child testified that she was "scared" every night when she went to bed while her mother was not home and that she slept in her mother's bed because she did not have an alarm clock near her bed. The child also said her mother had the key to the mailbox, so that unless her mother was there to open the mailbox, it would be "stuffed" with mail.

On March 26, 2002, Ken Landry from Child Protective Services responded to appellant's home and saw a child looking out the window as he knocked on the door. The principal and assistant principal from the children's school arrived and knocked on the door. The children

would not respond.  Thereafter, the police and two people listed as "emergency contacts" on the children's school forms arrived at the home.  The children would not respond.  Finally, a neighbor who had a key to the children's home arrived and unlocked the door, and was able to convince the children to unchain the door.  When the adults entered the home, the children were visibly upset and the adults comforted them.  Landry telephoned appellant at several numbers, including the new number listed on the note left with the children, but was unable to contact her.  Therefore, the children were placed into the custody of the Department of Social Services.

Discussion

Code § 18.2-371.1(B) states that any parent responsible for a child under the age of eighteen "whose willful act or omission of care of such child was so gross, wanton and culpable as to show a reckless disregard for human life" is guilty of felony child neglect.

> "Willful" generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful.  The term denotes "'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'"  The terms "bad purpose" or "without justifiable excuse," while facially unspecific, necessarily imply knowledge that particular conduct will likely result in injury or illegality.

Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (citations omitted). The requirement that an act be willful does not mean that the Commonwealth must prove the parent or caregiver intended to injure the child.  Collado v. Commonwealth, 33 Va. App. 356, 366, 533 S.E.2d 625, 630 (2000).  The term "gross, wanton and culpable as to show a reckless disregard for human life" describes conduct.  Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992) (describing the meaning of the phrase in the context of the involuntary manslaughter statute).  The word "gross" means "aggravated or increased negligence" and "culpable" means "deserving of blame."  Id.  A defendant's negligence is criminal negligence when "accompanied by acts of commission or omission of a wanton or willful nature, showing a

reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and that the offender knows, or is charged with the knowledge of, the probable results of his acts." Id. (citation omitted).

In Barrett v. Commonwealth, 41 Va. App. 377, 400-01, 585 S.E.2d 355, 367 (2003), we affirmed a conviction where the defendant left her children unattended. While Barrett napped following a night of drinking, she left her two-year-old daughter and ten-month-old son unsupervised. During Barrett's nap, the two year old drowned the ten month old in the bathtub. The evidence proved that Barrett was aware of the potential and likely dangers resulting from her conduct. Barrett knew her two year old enjoyed playing in the bathtub, and had sufficient strength to turn on the hot water and to lift her younger brother into the bathtub, and had previously behaved aggressively towards her brother. The Court found that "the evidence amply supported the determination that Barrett willfully, wantonly, and culpably created a situation in her home that exposed [her child] to injury and/or risk of death. By doing so, Barrett demonstrated a reckless and wanton disregard for [the child's] life and health." Id.

The evidence proved that appellant showed utter disregard for the safety and well-being of her children by leaving them unsupervised for several days and nights, thereby exposing them to injury and risk of harm or death. The notes she wrote her children indicate that she understood the risks associated with leaving children unsupervised for such a long period of time. She warned them to come home from school together and to lock the door. She warned them not to answer the telephone until confirming with Caller ID that it was a call from an acceptable number. Appellant showed reckless and wanton disregard for her children's health and safety by leaving them to prepare foods requiring them to use the stove or microwave without supervision, and by leaving an inadequate amount of food to comply with the menu and

no way to restock the refrigerator while she was away. Appellant's eight-year-old child said she was scared every night that her mother was away. The notes indicated that the children could only call their mother, appellant, with their concerns after appellant called them each night and told them where she was staying. Consequently, the children had no way to contact their mother if an emergency arose such as a fire, power outage, or if an intruder entered their home having noticed the mailbox was "stuffed" and no one was picking up the mail. The children had no way to contact their mother to ask what to do if they missed the school bus, or what to do if one or both of them got injured, or what medicine to take if one or both of them got sick, or if they had a medical emergency during the many days appellant was out-of-state. This inability to contact their mother was underscored when Landry called every phone number appellant left with her children and was unable to reach appellant.

The fact finder believed the Commonwealth's evidence. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trial judge, acting as fact finder, said, "The underlying act of leaving the kids for four days or a week or however long it was with no adult is so egregious that it's just not safe." The trial judge continued,

> [I]t is a fact that Ms. Ascencio removed herself from the Commonwealth of Virginia for a period of a minimum of four days, left the children on their own, and the Court finds the conduct is a reckless and willful disregard for the lives of her children and that it's not cured by the fact that she left the notes.

The Commonwealth's evidence proved that appellant was the mother of her two young children,[1] that she left her young children alone for several days and nights unsupervised and without

---

[1] The eight-year-old child's testimony coupled with circumstantial evidence contained in certain Commonwealth's exhibits, was sufficient to prove beyond a reasonable doubt that appellant was the mother of the eleven-year-old child.

adequate food, and that she left them to care for themselves and get themselves to school, all of which constituted a "willful act or omission in the care" of the children and constituted criminal negligence. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant committed two counts of felony child neglect.

For these reasons, appellant's convictions are affirmed. However, a conviction under Code § 18.2-371.1(B) is a Class 6 felony. Pursuant to Code § 18.2-10(f), a Class 6 felony is punishable with a maximum prison term of up to 5 years. Consequently, we remand this matter for the trial court to modify the sentences.

<u>Affirmed and remanded.</u>

Benton, J., dissenting.

To sustain a conviction for violating Code § 18.2-371.1(B), the Commonwealth must prove beyond a reasonable doubt "willful" conduct.

> "Willful" generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful. The term denotes "'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'" The terms "bad purpose" or "without justifiable excuse," while facially unspecific, necessarily imply knowledge that particular conduct will likely result in injury or illegality.

Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (citations omitted). "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" Bryan v. United States, 524 U.S. 184, 191 (1998). In other words, the evidence must prove "the defendant acted with an evil-meaning mind." Id. at 193.

The evidence proved Marsha King Ascencio demonstrated grossly bad judgment in leaving the children alone. She was a single parent who left the children alone while she was working. She relied upon the maturity of children ages eleven and eight to follow her instructions, care for themselves, and telephone her or a neighbor if they needed assistance.

It is not enough, however, to conclude that Ascencio's conduct was marked by a knowing or understanding quality. "Most obviously [willful] differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind." Id. at 191. On the other hand, conduct that is knowing "does not necessarily have any reference to a culpable state of mind or to knowledge of the law." Id. at 192. Indeed, as we have noted, "willful maltreatment of a child requires 'something worse than good intentions coupled with bad judgment.'" Ellis, 29 Va. App. at 556, 513 S.E.2d at 457 (citations omitted).

I would hold that the evidence failed to prove Ascencio's conduct was willful. Therefore, I would reverse the felony convictions.