ELDER, J.,
with whom BENTON and HUMPHREYS, JJ., join, dissenting.
I believe the evidence was insufficient to support Samantha Morris’s convictions for felonious child neglect, in violation of Code § 18.2-371.1(B)(1), because the evidence did not prove she willfully failed to provide care for her children in a manner so gross, wanton and culpable as to show a reckless disregard for their lives. Thus, I would reverse the convictions, and I respectfully dissent.
When considering the sufficiency of the evidence to support a conviction on appeal, we view the evidence “in the light most favorable to the Commonwealth and grant all reasonable inferences fairly deducible therefrom.” Ellis v. Commonwealth, 29 Va.App. 548, 551, 513 S.E.2d 453, 454 (1999). “Where inferences are relied upon to establish guilt,” however, “they must point to guilt so clearly that any other conclusion would be inconsistent therewith.” Dotson v. Commonwealth, 171 Va. 514, 518, 199 S.E. 471, 473 (1938). Thus,
All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt.
Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). “There is no stronger presumption afforded than that an accused is presumed to be innocent, which cannot be overthrown except by proof of his guilt beyond a reasonable doubt.” Dotson, 171 Va. at 517, 199 S.E. at 473; see Commonwealth v. Hudson, 265 Va. 505, 513-14, 578 S.E.2d 781, 785-86 (2003).
A.
Intent, like any other element of a crime, may be proved by circumstantial evidence. However, to establish the requisite *48 level of criminal intent beyond a reasonable doubt, the evidence must exclude all reasonable hypotheses of innocence. See, e.g., Rice v. Commonwealth, 16 Va.App. 370, 372, 429 S.E.2d 879, 880 (1993). Because I believe the Commonwealth failed to exclude a reasonable hypotheses of innocence — specifically, that Morris did not intentionally or knowingly fall into a heavy slumber — I would reverse her convictions for felony child neglect.
The Supreme Court recently clarified the element of intent required to support a conviction under Code § 18.2-371.1: “The term ‘willful act’ imports knowledge and consciousness that injury will result from the act done. The act done must be intended or it must involve a reckless disregard for the rights of another [that] will probably result in an injury.” Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004). Thus, the issue of intent requires an examination not only of the act that created the risk, but also of the degree to which the accused “was aware of the danger” that resulted from the act. Ellis, 29 Va.App. at 555, 513 S.E.2d at 457. A showing of “inattention and inadvertence,” i.e., simple negligence, is therefore insufficient to justify the imposition of a criminal penalty. Id. at 555-56, 513 S.E.2d at 457; see also Commonwealth v. Duncan, 267 Va. 377, 384, 593 S.E.2d 210, 214 (2004) (“[T]he statutory language does not apply to acts of simple negligence.”). Rather, the negligence must be “gross negligence” and must be
“accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless disregard or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of [her] acts.”
Barrett, 268 Va. at 183, 597 S.E.2d at 111 (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)).
Under the circumstances of this case, the Commonwealth failed to prove that Morris willfully engaged in the conduct *49 allegedly constituting the act of neglect. Although the majority asserts that the evidence was sufficient to establish that Morris “willfully” fell into a deep sleep, thereby creating the risk of harm to her children, the Commonwealth failed to present any evidence — beyond speculation — that Morris purposefully engaged in any act knowing that it would cause her to fall asleep. Thus, the evidence leaves open a reasonable hypothesis of innocence: Morris accidentally fell into a deep sleep and, while she continued to nap, her children woke up and left the trader without her knowledge.
First, the evidence presented at trial was insufficient to establish that Morris knew her children might leave the trailer while she was taking a nap. As Morris argued at trial, the record, even viewed in the light most favorable to the Commonwealth, contains little information surrounding the previous occasion during which Morris’s children left the residence on their own and had to be returned by a neighbor. Thus, the record leaves open the reasonable hypothesis that, on that prior occasion, Morris failed to secure the door to the residence and that, on this subsequent occasion, she was entitled to conclude that engaging the door’s lock and chain would keep her children from leaving the trailer. The fact that Morris’s actions did not eliminate all risk to her children was insufficient to prove criminal negligence. As we recognized in Ellis, “willful maltreatment of a child requires ‘something worse than good intentions coupled with bad judgment.’ ” 29 Va.App. at 556, 513 S.E.2d at 457 (quoting Mullen v. United States, 263 F.2d 275, 276 (D.C.Cir.1958)); cf. Kelly v. Commonwealth, 42 Va.App. 347, 355-57, 592 S.E.2d 353, 357-58 (2004) (upholding conviction where defendant left twenty-one-month-old child strapped in car seat for seven hours, resulting in child’s death, and evidence established that, on three previous occasions over period of years, neighbors had to alert defendant to fact that a child had been left locked inside one of defendant’s vehicles).
Second, no evidence indicates Morris was under the influence of any intoxicants that caused her to sleep so soundly she would not know whether the children had left the residence. *50 Although Moms admitted she had a “significant” cocaine problem as of the date of trial on February 3, 2004, no evidence established the degree of her cocaine use in September 2003. And, although Morris testified that, prior to the children’s escape on September 29, 2003, she had used cocaine three days earlier, the Commonwealth presented no evidence contradicting her further testimony that, at the time of the children’s escape, she was not under the influence of any intoxicants that would have diminished her awareness of the children’s whereabouts or her ability to care for them.[1] Indeed, the trial court’s finding that “somehow, she was so sound asleep” is an explicit indication that it did not attribute Morris’s deep sleep to any specific cause. (Emphasis added).
To conclude — as does the majority — that Morris was under the influence of drugs on the date in question, we would be required to stack inference upon inference. Specifically, we would be required to infer that: (1) because Morris had a “significant” cocaine problem in February 2004, she had a “significant” cocaine problem in September 2003; and (2) because she had a “significant” cocaine problem in 2003, she used cocaine on the day in question; and (3) while using cocaine on the day in question, she took enough cocaine that she knew she might pass out; and (4) because she did, in fact, pass out, she was unable to care for her children. This structure of inferences renders the majority’s conclusion — that Morris was unable to care for her children because she was under the influence of drugs — completely speculative. It therefore fails as a matter of law. See Dunn v. Commonwealth, 222 Va. 704, 705-06, 284 S.E.2d 792, 793 (1981) (‘Verdict[s] ... based only upon speculation and conjecture ... cannot be permitted to stand.”); see also Smith v. Mooers, 206 *51 Ya. 307, 312, 142 S.E.2d 473, 477 (1965) (“[The appellant] seeks to build an inference upon an inference, which the law does not permit him to do.”).
The majority, however, relies on the fact that Morris “fell into such a coma-like sleep for several hours during the daytime that she was unable to respond” to (1) “banging on her door and a barking dog” at about 9:30 a.m., and (2) “S’s cries for his ‘mommy’ ” and “the officer’s entry into the trailer announcing he was a police officer” at around 11:30 a.m. (Emphases added). This conclusion is also unsupported by the evidence. Although elementary school employee Richard Goodin apparently was unable to rouse Morris when he first visited the residence at 9:30 a.m., no evidence established that Morris should have been able to hear what Goodin described as “knocking,” not “banging,” from her position in the bedroom or that she had any duty to respond to his knocking, or to the sound of her barking dog, even if she did. Most importantly, no evidence established that the children were awake at that time. Goodin did not see anyone in or around the home, and the only sound he heard was the barking of the dog. Not until Goodin returned at 11:15 a.m. did he first see the children playing, unsupervised, outside the residence. Although Goodin testified that he waited five to fifteen minutes for the police to respond to his 911 call, no evidence established how much time elapsed from when he first arrived at the residence until Morris was awakened and again able to care for her children. Thus, the majority’s conclusion that Morris “fell into such a coma-like sleep for several hours during the daytime that she was unable to respond” to the needs of her children is not the only reasonable hypothesis flowing from the evidence. (Emphases added).
Accordingly, in the absence of evidence either (1) that, on some prior occasion, the two-and five-year-old children opened a locked and chained door in order to leave the residence, or (2) that their mother was under the influence of drugs or other self-administered intoxicants causing her to sleep so soundly or for so long that she was unable to render adequate supervision, I am unwilling to conclude that a mother who naps with *52 her children but fails to awaken when the children arise is guilty of criminal negligence, whether or not she is aware that she is a particularly sound sleeper. Morris’s napping during the day while her partially clad five-and two-year-old children managed to open the front door and go out to play in the neighborhood amounted, at most, to bad judgment or simple negligence, not the criminal negligence necessary to support a conviction under Code § 18.2 — 371.1(B)(1).
B.
The majority, however, relying principally upon Barrett, concludes that Morris’s “willful” act of falling asleep constituted criminal negligence. For the reasons that follow, I do not believe that Barrett is persuasive under the circumstances of this case. Rather, I believe that the circumstances presented in Ellis are more analogous to this case and, therefore, mandate reversal of Morris’s conviction. In Barrett, the Supreme Court affirmed a conviction for felony child neglect where a ten-month-old infant’s two-year-old sister placed him in the bathtub, where he drowned. 268 Ya. at 183-86, 597 S.E.2d at 110-12. The conviction at issue under Code § 18.2-371.1(B)(1) involved Barrett’s neglect of her daughter, who suffered no physical injuries. Id. at 186, 597 S.E.2d at 112. The evidence established that Barrett knew her daughter was jealous of the infant and had a “propensity for attempting to injure [him].” Id. at 184, 597 S.E.2d at 111. Barrett also knew her daughter loved to play in the bathtub, was able to climb in and operate the tub’s faucets by herself, and had previously pulled the infant, “head first,” into the bathtub with her. Id. at 185, 597 S.E.2d at 111-12. Finally, Barrett acknowledged that the sound of water running in the bathroom was audible from other parts of the home. Id.
The evening before the infant drowned, Barrett stayed out all night drinking beer. Id. at 185, 597 S.E.2d at 112. She drove home at 6:00 a.m. and acknowledged that she was still intoxicated enough at that time to have been arrested for driving under the influence. Id. Sometime that morning, while “still intoxicated as well as tired,” Barrett fell asleep at a *53 time when she “[knew] she was the only one left in the apartment to supervise the children.” Id.
The Court held “the jury could have concluded that Barrett’s conduct was willful and accompanied by acts of omission of a wanton nature showing a reckless or indifferent disregard of the life and health of both children.... What we have here is the story of a disaster just waiting to happen____” Id. at 185-86, 597 S.E.2d at 112. The Supreme Court distinguished its decision in Barrett from our earlier decision in Ellis, reasoning that Barrett’s neglect was willful whereas Ellis’s neglect was inadvertent. Id. at 186 n. 8, 597 S.E.2d at 112 n. 8.
Ellis involved a mother who turned on a burner of her apartment’s gas stove to light a cigarette and then left the apartment to visit a friend in a nearby apartment while her two young children were napping. Ellis, 29 Va.App. at 551-52, 513 S.E.2d at 455. A fire broke out in Ellis’s apartment shortly after she left. Id. at 552-53, 513 S.E.2d at 455. In reversing Ellis’s conviction, we reasoned as follows:
While appellant ... purposefully and intentionally left her apartment ..., the intent which is relevant to our determination of “bad purpose” does not relate simply to why she left the apartment. Rather, it relates to the degree to which she was aware of the danger when leaving her children unattended. Here, no evidence establishes that ... she acted with knowledge or consciousness that her children would be injured as a likely result of her departure to visit a neighbor for a short period of time in another residential building.
[Further, the evidence] fails to show that appellant left the apartment knowing the burner was on and in conscious disregard of the likely ignition of a grease fire that would ultimately endanger the lives of her children____
... [I]nattention and inadvertence have not been heretofore equated with actions taken willfully, thus making them subject to criminal penalty. Similarly, appellant’s inability to “see anything wrong with what she had done by going *54 outside and leaving the children alone in the apartment,” while clearly misguided, is reflective of simple negligence, not criminal conduct.
Id. at 555-56, 513 S.E.2d at 457 (citations omitted).
I would hold that Morris’s conduct was more akin to Ellis’s than Barrett’s because the evidence failed to show Morris “was [or should have been] aware of the danger” that resulted from her acts. See Ellis, 29 Va.App. at 555, 513 S.E.2d at 457; see also Barrett, 268 Va. at 184, 597 S.E.2d at 111 (requiring proof that defendant “ ‘[knew], or [was] charged with the knowledge of, the probable results of [her] acts’” (quoting Cable, 243 Va. at 240, 415 S.E.2d at 220)); Mangano v. Commonwealth, 44 Va.App. 210, 215, 604 S.E.2d 118, 120 (2004) (noting that the “distinguishing feature between Barrett and Ellis is an awareness of the likely danger in the defendant’s conduct”). Unlike Barrett, no evidence established that Morris failed to take steps to prevent the recurrence of a prior similar event or engaged in purposeful conduct knowing it would expose her children to a substantial risk of harm. Accordingly, I believe that Barrett is inapplicable under the circumstances of this case. Rather, as in Ellis, Morris’s “inattention and inadvertence ... is reflective of simple negligence, not criminal conduct.” Ellis, 29 Va.App. at 555-56, 513 S.E.2d at 457.
C.
As noted by the Supreme Court of Virginia, “[l]ike any other element[ ] of a crime, [intent] must be proved beyond a reasonable doubt and not left to speculation.” Caminade v. Commonwealth, 230 Va. 505, 510, 338 S.E.2d 846, 849 (1986). By the failure of the Commonwealth to prove that Morris engaged in any conduct knowing that it would cause her to fall asleep and, therefore, be unable to watch over her children, the trial court could only speculate as to whether Morris intended to commit the act that caused her to be unable to supervise her children. The trial court’s finding that “somehow, she was so sound asleep” is an explicit indication that it *55 did not attribute Morris’s deep sleep to any particular cause. And, because the Commonwealth did not exclude all reasonable hypotheses of innocence, the evidence was insufficient, as a matter of law, to establish that Morris willfully engaged in the alleged conduct with the knowledge that she was exposing her children to a substantial risk of bodily harm. Because I would hold the evidence was insufficient to prove criminal negligence, I would reverse and dismiss Morris’s convictions for violating Code § 18.2 — 371.1(B)(1). Thus, I respectfully dissent.

. The fact that the trial court made a general finding that appellant did not give credible testimony does not provide affirmative evidence that her functioning was, in fact, impaired on the morning in question, either because she was under the influence of cocaine or some other intoxicant or was unusually tired because of their earlier use. See, e.g., Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001).