COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


JOHN RUSSELL BRADBURY
                                                      MEMORANDUM OPINION[*] BY
v.        Record No. 2203-09-1                      JUDGE SAM W. COLEMAN III
                                                            NOVEMBER 2, 2010
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                              John E. Clarkson, Judge Designate

                  Amina Matheny, Senior Assistant Public Defender (Chesapeake
                  Public Defender's Office, on brief), for appellant.

                  Robert H. Anderson, III, Senior Assistant Attorney General
                  (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


        John Russell Bradbury (appellant) appeals his convictions of abduction, arson of an

occupied dwelling, arson of land, and burglary with the intent to commit arson.  On appeal,

appellant contends the evidence was insufficient to support his convictions.  We agree that the

evidence is insufficient to support his conviction of arson of land, and we reverse that conviction.

However, we find the evidence sufficient to support the remaining convictions.

                                              FACTS

        Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom.  See Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779

(1999).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On February 5, 2008, appellant lived with his wife, April Bradbury (April), at their rented residence at 1441 Fentress Road in Chesapeake. The couple argued that evening, and April said she wanted a divorce. Eventually, the situation calmed, and appellant and April went to bed.

In bed, appellant put his arm around April. April reminded him that "it's over," and asked him to remove his arm. April got up to leave the bedroom and sleep downstairs on the living room couch. When April reached the doorway, appellant picked her up and threw her across the bed. He pinned April's back to the bed and "straddled" her for ten minutes. While he held her down, appellant screamed, "You have to listen to me. You're my wife. You can't go." April described appellant's demeanor as "very angry." April was frightened and asked appellant to release her. Appellant then moved so he was lying on his back with April lying face up on top of his chest. Appellant locked his arms around April in a "bear hug" and squeezed tightly. The more April struggled, the harder appellant squeezed and the more he screamed at her. Appellant held April in this fashion for five to ten minutes. April stopped struggling, and appellant released her. She remained on the bed because she believed appellant would hurt her again if she tried to leave the bedroom.

Subsequent to the February 5, 2008 incident, April obtained a protective order against appellant, barring him from the residence at 1441 Fentress Road and prohibiting him from contacting her. Appellant was served with the protective order and was advised of its contents. However, appellant continued to make harassing telephone calls to April.

On March 27, 2008, April was no longer staying at the residence and was preparing to move out permanently. However, she was returning to the home twice a day to care for her cat. She had left behind in the home some cut flowers in a vase a family friend had given her on February 28, 2008. Although the flowers had wilted, April had not thrown them away because receiving them had lifted her spirits.

On March 27, 2008, the residence at 1441 Fentress Road burned to the ground. Charles Emerick, an investigator for the Chesapeake fire department and an expert regarding fire origins, responded to the reported fire and found the entire structure engulfed in flames. Emerick was unable to determine the specific place in the home where the fire began, but did determine that it originated in the living room. The Commonwealth introduced no evidence that the fire extended beyond the structure.

Police officers interviewed appellant on the day of the fire. Initially, appellant denied returning to the residence or having anything to do with the fire. Eventually, however, appellant admitted he returned to the home on March 27, 2008. He said he saw the flowers and became upset because he realized his wife was not coming back. Appellant then "start[ed] the couch on fire with my lighter." Appellant grabbed the cat and left. Appellant added, "I never meant to burn the whole house, just the couch."

Testifying in his own behalf, appellant admitted he and April argued on February 5, 2008, and that she tried to leave the bedroom after they retired for the night. Appellant denied slamming her on the bed or straddling her. Appellant said that he did "grab her and put her down," but he did not "have a tight grip." Appellant testified he made a small attempt to keep April's hands down. Appellant denied that he held her in a bear hug or that she tried to get up from the bed.

Appellant further testified that he believed the protective order prohibited him from going to the residence only when April was there. Before the fire occurred, appellant had a private investigator watching the house. The investigator advised appellant that April had not been to the house for three days. Appellant went to the house on March 27, 2008 to "see what was going on."

Appellant stated that after he entered the house, he released the cat from its cage and fed it. Appellant noticed the flowers, and became "sad and depressed." Appellant claimed that the "voices in [his] head" told him "to get rid of her and get rid of the memories." As a result, appellant lit the sofa on fire with his cigarette lighter. Appellant sat on the couch with the cat for about five minutes. When appellant left, he claimed, he did not think anything in the house was on fire and did not smell smoke.

On cross-examination, appellant admitted that on February 5, 2008, April asked him what he would do if he found out she was cheating on him. Appellant replied to April, "I'd probably kill the both of you."

ANALYSIS

Abduction

Pursuant to Code § 18.2-47(A),

> Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

Appellant contends he was not guilty of abduction because his actions on February 5, 2008, were merely a desperate attempt to reason with April and save their marriage.

When considering the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the Commonwealth, the prevailing party at trial. See Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). On review, an appellate court should not substitute its judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). A court considering a challenge to the sufficiency of the evidence does not "'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19

- 4 -

(1979) (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)).  Rather, the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.

"[M]ere detention is sufficient under Code § 18.2-47 to establish abduction and the asportation and detention may be accomplished by force, intimidation, or deception."  Walker v. Commonwealth, 272 Va. 511, 517, 636 S.E.2d 476, 479 (2006).  The evidence in this case demonstrated appellant both detained and asported April using force and without legal excuse or justification.  As April tried to leave the bedroom, appellant grabbed her and threw her on the bed.  Appellant restrained her on the bed for ten minutes despite her repeated entreaties that he release her.  Appellant screamed at April and appeared very angry.  Appellant then held April tightly in a bear hug and refused to let her go for an additional five to ten minutes.  Therefore, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of abduction.

Arson of an Occupied Dwelling

Appellant was convicted of violating Code § 18.2-77, which makes it unlawful to "maliciously . . . burn[], or by use of any explosive device or substance destroy[], in whole or in part, or cause[] to be burned or destroyed . . . any dwelling house . . . ."  Appellant argues the burning of the house was accidental and not malicious.  "No Virginia case distinguishes the malice which is a necessary element of arson from the malice which has been required in other common law crimes."  Bell v. Commonwealth, 11 Va. App. 530, 532, 399 S.E.2d 450, 452 (1991).  "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence."  Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997).  "Malice inheres in the intentional doing of a wrongful act without legal

justification or excuse." Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991).

In contending the burning of the home was "wholly accidental," appellant relies solely upon his own testimony, in which he claimed to have left the residence not knowing there was an active fire. However, the trial court rejected appellant's version of the events. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

In his statement to the police on the day of the fire, appellant admitted that he set the couch on fire using his cigarette lighter. Taking the cat with him, appellant then left the residence. Appellant admitted that he intended to burn the couch. Thus, the Commonwealth's evidence proved that appellant was well aware of the fire when he left the house. Emerick determined that the area of origin of the fire was the living room, where the couch was located. The obvious result of appellant's burning of the sofa was the complete destruction of the house. The evidence therefore was sufficient to prove beyond a reasonable doubt that appellant set the fire intentionally and maliciously and that he was guilty of arson of the dwelling.

Arson of Land

Appellant was convicted of violating Code § 18.2-86, which provides, "If any person maliciously set fire to any wood, fence, grass, straw or other thing capable of spreading fire on

land, he shall be guilty of a Class 6 felony."  Appellant contends the evidence was insufficient to prove he possessed the specific intent to burn the land.[1]

As we have concluded above, the evidence established that appellant intended to commit arson of the dwelling when he set the couch on fire.  One act of ignition may, in some circumstances, support multiple units of prosecution for arson.  See Schwartz v. Commonwealth, 267 Va. 751, 754, 594 S.E.2d 925, 927 (2004).  However, the intent to set fire to a dwelling house does not automatically extend criminal liability to the burning of adjacent items or artifacts.  Id. at 754-55, 594 S.E.2d at 927 (holding that construing arson statute to permit prosecution for every item destroyed "would improperly yield an absurd result").  We hold that the evidence in this case is insufficient to prove beyond a reasonable doubt either what items or artifacts on the land the fire burned or whether appellant intended to burn those items.

Here, no evidence exists from which it can be inferred that appellant also intended to burn the land surrounding the home.  Significantly, there was no testimony or other proof that the land or grass around the home was burned.  Although photos introduced into evidence showed

---

[1] At oral argument, the Commonwealth contended appellant's argument was procedurally barred because it was not an issue raised in the petition for appeal, see Rule 5A:12(c)(1)(i), was not argued properly in appellant's brief, see Rule 5A:20(e), and was not considered by the trial court, see Rule 5A:18.  In the petition for appeal, appellant stated this question presented as follows:

> Whether the circuit court judge erred when he found Mr. Bradbury guilty of arson of land when Mr. Bradbury did not have the specific intent to commit arson of land when he attempted to set fire to the couch and he thought the fire went out before he left the residence.

Thus, the question presented does assert that there was no specific intent to burn the land.  Moreover, in the argument section of his brief, appellant contends that all the burning was accidental, as he claimed in the trial court.  This argument implicitly asserts that there was no evidence to prove appellant had the specific intent to burn the land.  Furthermore, in appellant's motion to strike in the trial court, he specifically argued that the evidence failed to prove an intent to burn the house or the land outside the house.  Therefore, we do not find that the issue is procedurally barred.

that the leaves or foliage on a bush or small tree beside the house were singed, it is unreasonable to conclude, without more, that setting fire to the couch *inside* the residence evinces an intent to burn "any wood, fence, grass, straw or other thing capable of spreading fire" outside on the land. Therefore, the Commonwealth failed to prove that appellant intended to burn the land or, indeed, that any land was burned as a result of appellant's actions. Accordingly, we reverse appellant's conviction of arson of the land.

Burglary with the Intent to Commit Arson

Appellant was convicted of violating Code § 18.2-90 by breaking and entering a dwelling house with the intent to commit arson. Appellant contends his conviction must fail because the evidence did not prove he possessed the intent to commit arson at the time he entered the home.

> Where, as in this case, "an indictment charges an offense which consists of an act combined with a particular intent, proof of the intent is essential to conviction." Patterson v. Commonwealth, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975). Although the Commonwealth may prove by circumstantial evidence the specific intent . . . , that proof must be, as in all criminal cases, beyond a reasonable doubt. Jones v. Commonwealth, 3 Va. App. 295, 299, 349 S.E.2d 414, 417 (1986).

Maynard v. Commonwealth, 11 Va. App. 437, 452, 399 S.E.2d 635, 644 (1990) (*en banc*).

Nonetheless, "'[w]hen an unlawful entry is made into a dwelling, the presumption is that the entry was made for an unlawful purpose.'" Black v. Commonwealth, 222 Va. 838, 840, 284 S.E.2d 608, 609 (1981) (quoting Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971)). "The specific purpose, meaning specific intent, with which such an entry is made may be inferred from the surrounding facts and circumstances." Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984). The finder of fact "may draw reasonable inferences from the evidence that the perpetrator intended to commit one felony rather than another." Black, 222 Va. at 841, 284 S.E.2d at 609.

The Commonwealth's evidence proved that appellant had a private investigator watch the house after April obtained the protective order. Appellant entered the home on March 27, 2008, knowing both that April was not there and that he was not permitted to be there. Appellant had the cigarette lighter with him when he entered the home. Once inside, as noted above, appellant intentionally set fire to the sofa. Appellant admitted that he had threatened to kill April if he learned she was cheating on him. From these facts and circumstances, the trial court could conclude, beyond a reasonable doubt, that appellant's intent to commit arson existed at the time of the entry and that he was guilty of statutory burglary.

## CONCLUSION

For the foregoing reasons, we reverse and dismiss appellant's conviction of arson of the land. We affirm appellant's convictions of abduction, arson of a dwelling, and burglary with the intent to commit arson.

Affirmed in part, and
reversed and
dismissed in part.
